UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRYL PIERCE and SHARON PIERCE )<br>on behalf of Themselves and All Others )<br>Similarly Situated, )<br>        Plaintiff, )<br>)<br>    vs. )<br>)<br>VISTEON CORPORATION and VISTEON )<br>SYSTEMS, LLC, )<br>        Defendant. ) | 1:05-cv-01325-LJM-TAB |

**<u>ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

This matter comes before the Court on Defendants', Visteon Corporation and Visteon Systems, LLC (collectively, "Visteon") motion for partial summary judgment as to the claims of certain class members in this Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166, notice action [dkt. no. 174]. Visteon argues that it is entitled to summary judgment with regard to many of the individuals currently within the Class because those individuals were timely sent COBRA notices upon the occurrence of a COBRA qualifying event. Additionally, Visteon argues that it is entitled to summary judgment on several current Class Members who were not eligible to receive COBRA notices because they did not undergo a COBRA qualifying event. Finally, Visteon argues that it is entitled to summary judgment with regard to another group of individuals currently in the Class because those individuals executed separation and/or settlement agreements by which they released and forever discharged Visteon from any and all claims arising out of their employment or separation of their employment. Having reviewed the briefing in this matter and heard oral argument, the Court concludes for the following reasons that

Visteon's Motion for Partial Summary Judgment as to the Claims of Certain Class Members is **GRANTED in PART and DENIED in PART**.

## I. BACKGROUND

Visteon supplies automotive systems, modules, and components to global vehicle manufactures and the automotive aftermarket. Manley Decl. at ¶ 3. In January 2000, it was incorporated as a wholly-owned subsidiary of Ford Motor Company ("Ford"). *Id.* at ¶ 4. On June 29, 2000, it separated from Ford. Metzigian Dep. at 13. From June 29, 2000 until May 31, 2002, Ford acted as the benefits administrator for all Visteon employees. Dalal Decl. at ¶ 3. It was responsible for performing the day-to-day administration of benefits and payroll on behalf of Visteon, including sending information to Visteon's COBRA administrator, Unicare Life and Health Insurance Company ("Unicare"). Metzigian Dep. at 19, 22. As COBRA administrator, Unicare was responsible for providing COBRA notices to qualified beneficiaries following the occurrence of a COBRA qualifying event. *Id.*

Plaintiffs consist of a class of former Visteon employees and/or their beneficiaries who claim that they did not receive timely notice of their rights to purchase continuing health care coverage under COBRA. In its Order certifying the class, the Court defined the class as follows:

> All Qualified Beneficiaries of group medical, dental, and/or vision benefit plans administered by Visteon Corporation and/or Visteon Systems, LLC in the United States who were entitled to be provided notice of their COBRA rights due to a qualifying event to a covered employee pursuant to 29 U.S.C. § 1163(a)(1), (2) and (4) and who were not provided said notice in a timely fashion pursuant to 29 U.S.C. § 1166 and whose claims arose within the

> statute of limitations applicable to the state of the facility in which the Qualified Beneficiary employed by Visteon Corporation and/or Visteon Systems LLC in the United States, worked, and whose qualifying even took place on or before September 6, 2005.

Dkt. No. 116. Following Visteon's production of information that it had collected from its COBRA administrators regarding the issuance of COBRA notices to employees upon the occurrence of qualified events, Plaintiffs selected individuals for inclusion in the class ("Class Members") and distributed class notices to Class Members. Dkt. No. 119. The Class consists of approximately 1,600 Class Members, and includes individuals who had qualifying events while Ford was the benefits administrator for Visteon's employees. Dalal Decl. at ¶ 3.

Believing that Unicare was supposed to have distributed the COBRA notices to Visteon employees who had qualifying events between June 2000 and May 31, 2002, Visteon sought discovery from Unicare regarding the COBRA notices that it issued during that time frame. Metzigian Dep. at 118-19. Unicare provided Visteon with information that Visteon subsequently produced to Plaintiffs, but Unicare never advised Visteon that it had not distributed COBRA notices during the June 2000 to May 31, 2002 time period. *Id.* at 122-23. In or around early October 2008, Visteon learned that Ford was the entity that issued COBRA notices to employees with qualifying events between June 2000 and May 31, 2002. Dalal Decl. at ¶¶ 4, 6.

Specifically, whenever an employee had a qualifying event, Ford mailed the employee a postcard with their final paycheck expressly advising the employee of his or her COBRA rights. *Id.* at ¶ 4. The postcard gave the employee the deadline to elect COBRA coverage and informed the employee about the amount of the COBRA premium

3

and instructed the employee to contact the COBRA coordinator for more information. *Id.* at ex. 1-2. It also warned the employee that it was the only notice that he or she would receive. *Id.* At the time that Ford mailed the COBRA postcards to Visteon employees, it made a contemporaneous entry in its computer system confirming that the employee had been sent the COBRA postcard, and also recording whether the employee had been sent a postcard relating to general medical coverage, dental coverage or both, and the type of postcard that was mailed to the employee. *Id.* at ¶ 5.

Additionally, fifteen Class Members executed separation and/or settlement agreements with Visteon by which they expressly agreed to release various claims relating to their employment at Visteon. Manley Decl. at ¶¶ 11-12.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials

showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would

bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

As an initial matter, the Class has stipulated to summary judgment being entered as to the following individual Class Members: Wenseslao Holguin; Alberto Delfim; Stephen De La Salle; Rodrigo Guillen; Frank Amirhamzeh; James Fazio; Ahmed Omara; Anthony Verbiscus; James J. Kelly; Paul G. Stever; Radbound Vaessen; Luis Munoz; Bibiane Comte; Daniel Gizaw; William Patton; Michael Hagemann; Luiz C. Rodrigues; Paul McNeill; Andrezj Polak; Christopher Duco; Denise James; and Ross Richardson. Accordingly, as to the above listed Class Members, the Court **GRANTS** Visteon's Motion for Summary Judgment.

Additionally, the Court must address Visteon's Motion to Strike the Class's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment [dkt. no. 215] before reaching the substance of Visteon's summary judgment motion. Visteon premises its contention that the Court should strike Visteon's Sur-Reply on Local Rule 56.1(d), which limits the filing of a surreply as a right, to situations where the moving party's reply brief "relies upon evidence not previously cited or objects to the admissibility of the non-moving parties evidence . . . ." However, in this case, the Court granted the Class's motion for leave to file a surreply. *See* dkt. no. 210. The content of the Class's Sur-Reply is within the scope of the Court's Order granting it leave to file. Accordingly, the Court **DENIES** Visteon's Motion to Strike

the Class's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment [dkt. no. 215].

Remaining is Visteon's contention that several other individual Class Members should be excluded from the Class because they either received COBRA notices in a timely manner after the occurrence of their qualifying event or because they executed separation and/or settlement agreements in which they released their COBRA claims. The Court will address each group of individual Class Members in turn.

Visteon asserts that Ford mailed COBRA notices to employees who experienced a qualifying event between June 2000 and May 31, 2002, according to the procedure described above and, accordingly, those Class Members to whom Ford mailed a COBRA notice should be excluded from the Class because they timely received their COBRA notice.[1] This, according to Visteon, amounts to seven hundred seventy-one individuals currently in the Class.

The Class asserts that Visteon has not met its burden of proving that the seven hundred seventy-one Class Members were timely provided with adequate notice of their COBRA rights. *See Keegan v. Bloomingdales, Inc.*, 992 F. Supp. 974, 978 (N.D. Ill. 1998) (noting that "the plan administrator bears the burden of proving that adequate notice of COBRA rights was provided to the former employee"). COBRA requires the plan administrator to notify the former employee of his or her right to receive continuation coverage within forty-four days of the former employee's qualifying event. 29 U.S.C. §

---

[1] Because the Class failed to support its Statement of Material Facts in Dispute with citations to the record, the Court deems the undisputed facts set forth in Visteon's brief admitted. L.R. 56.1; *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

1166(a)(4)(A). Although the Seventh Circuit has not addressed the issue, several other federal district courts, including this Court's sister court, and at least two federal appellate courts, have held that "'a good faith attempt to comply with a reasonable interpretation of the statute' is sufficient to satisfy COBRA requirements." *See Crotty v. Dakotacare Admin. Servs.*, 455 F.3d 828, 830 (8th Cir. 2006); *Turner v. Adidas Promotional Retail Operations*, Inc., No. 07 C 2511, 2009 U.S. Dist. LEXIS 26905, *27-*28 (N. Dist. Ill. Mar. 31, 2009); *Keegan*, 992 F. Supp. at 977 (quoting *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997)). Accordingly, whether the former employee actually received the notice is not the focus of the Court's inquiry. Instead, the Court must consider whether the evidence leaves a genuine issue of material fact concerning whether Ford "caused the notice to be sent in a good faith manner reasonably calculated to reach the former employee." *See Keegan*, 992 F. Supp. at 977-78 (collecting cases).

To carry its burden of proving that it satisfied the statute's requirement, Visteon offers evidence in the form of a declaration form the director of Ford Healthcare Management, Karl Dalal, that Ford, as the contracted benefits administrator for Visteon employees from June 29, 2000 to May 31, 2002, issued COBRA notices to Visteon employees who experienced qualifying events. Dalal Decl. at ¶ 3. Mr. Dalal went on to state that as part of its duties as benefits administrator, Ford mailed any Visteon employee who experienced a qualifying event a postcard advising the employee of his or her COBRA rights along with the employee's last paycheck. *Id.* at ¶ 4. Further, Mr. Dalal stated that every time a postcard was mailed to an employee who had a qualifying event, Ford Healthcare Management made a contemporaneous entry in its record keeping system indicating whether the employee received a notice regarding general medical benefits or

dental benefits or both. *Id.* at ¶ 5. Additionally, attached as exhibits to Mr. Dalal's declaration are representative examples of the COBRA notice postcards Ford Healthcare Management mailed to employees who experienced a qualifying event. *Id.* at ex. 1-2.

The Class notes that although Visteon designated evidence as to the procedure Ford, Visteon's contracted benefits administrator, followed, it did not designate any evidence to indicate that Ford followed its procedure reliably or that it actually mailed any of the notices to any of the disputed individuals. Accordingly, argues the Class, the Court cannot determine as a matter of law that Ford properly notified the disputed Class Members. Ultimately, the Class asks the Court whether Visteon has presented sufficient proof to satisfy the good faith compliance standard. In answering the question, the Court turns to the reasoning of its sister court in *Keegan* and the Eighth Circuit in *Crotty* in considering the measure of proof necessary to secure summary judgment on a COBRA claim challenging the notice of the continuation of benefits that a plan administrator provided to an employee.

In *Keegan*, the court concluded that "unrefuted evidence by a plan administrator concerning adequate standard office procedures for generating and mailing COBRA notices along with unrefuted evidence showing that the procedures were consistently followed in a given individual's case is sufficient . . . to prove that the administrator satisfies" the good faith standard. 992 F. Supp. at 980-81. Accordingly, testimony as to the standard operating procedures and evidence that the defendant consistently followed the procedures was sufficient to satisfy the good faith standard even though the defendant presented no evidence that the notice was actually mailed. *See id.* at 981.

9

In *Crotty*, on the other hand, the court concluded that the defendant did not provide sufficient evidence to survive summary judgment on the issue of whether it satisfied the good faith standard. 455 F.3d at 831. In *Crotty*, the plaintiff contended that she never received her COBRA notice. *Id.* at 829. The plan administrator produced an audit report indicating that its computerized system had generated a notice letter to the plaintiff as well as testimony as to the company's procedure for mailing notification letters. *Id.* at 830. However, the plan administrator was unable to produce evidence tending to prove that the plaintiff's notification letter was ever actually printed or mailed. *Id.* The court concluded that because the plan administrator did not produce sufficient evidence tending to prove that its system for sending COBRA notices was followed with regard to the plaintiff, the plaintiff was entitled to summary judgment on the issue of whether she received notice. *Id.* at 830-31 (holding that "the administrator must provide something that indicates that its mailing system was reliable and that the system was followed in the relevant instance").

The Class argues that like the defendant in *Crotty*, Visteon has not presented any evidence that Ford Healthcare System's COBRA notice system was reliable, or that it was followed in the relevant instance and, accordingly, cannot carry its burden, preventing the Court from granting summary judgment in its favor. This case is unlike *Crotty* because Visteon has provided the Court with evidence tending to prove that the notices at issue were actually mailed. Specifically, it designated a chart in which contemporaneous notations were made when each postcard was mailed. Dalal Decl. at ¶ 5; Id. at ex. 1. Although Visteon presented the Court with no evidence specifically describing Ford's system as "reliable," it has provided the Court with the statements of one Class Member employee, John J. Knapp, contending that he did receive notice from Ford regarding his

10

COBRA rights. Hannesson Murphy Decl., at ex. 5. The Class does not refute with any supporting evidence that Mr. Knapp, or any specific Class Member received COBRA notices from Ford. Further, the Class does not refute that Ford made a contemporaneous entry into its database every time it sent one a COBRA notice. The Class relies heavily upon the argument that Ford has not provided a specific date of mailing for each of the postcards. However, no such date is required. *See Keegan* 992 F. Supp. at 980-81.

The Class also argues that Visteon failed to designate any evidence as to whether any of the seven hundred seventy-one individual Class Members at issue received COBRA notices regarding their vision benefits and/or health care spending accounts. Indeed, the chart designated by Visteon only indicates whether an employee received a notice concerning his or her medical or dental benefits. Visteon argues that its designated exemplar COBRA notifications indicate that the COBRA notifications could address vision and/or health care spending accounts as appropriate. Although the examples do indicate that the postcards could address vision and/or health care spending accounts, Visteon has not designated evidence tending to show that the proper notices were actually mailed to the proper parties. Visteon's chart contains a contemporaneous entry for the mailing of postcards including information on medical and dental benefits, but it includes no such notation for vision benefits and/or health care spending accounts. Because the seven hundred seventy-one Class Members at issue were salaried employees and vision benefits and health care spending accounts were available to them, in order to prevail on summary judgment as to these Class Members, Visteon must provide at least some evidence tending to prove that the correct benefits were identified on the notification card. In other words, Visteon must show that Ford's system for sending out COBRA notices adequately ensured

11

that the correct type of notice was being sent to the correct individual. Without such evidence, it is impossible for the Court to conclude as a matter of law that the seven hundred and seventy-one Class Members were adequately notified. *See Keegan*, 992 F. Supp. at 980-81. Further, although each card did contain language stating that the COBRA coverage that the recipient was eligible for was based upon his or her existing coverage and family status, that alone is not sufficient to "adequately inform the beneficiary of the COBRA coverage he [or she] is entitled to receive . . . and the money owed to maintain this coverage." *See Geissal v. Moore Med. Corp.*, 338 F.3d 926, 934 (8th Cir. 2003). Accordingly, the Court **DENIES** summary judgment as to the seven hundred seventy-one Class Members. *See Johnson v. Hix Wrecker Serv.*, 651 F.3d 658, 662 (7th Cir. 2011) (noting that "[a] party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance").

Finally, the Court turns its attention to the Class Members who executed separation agreements. Specifically, Visteon asserts that Mr. Zhou, Ms. Wagner, Mr. Mahendru, Mr. Ford, and Ms. Coleman released any COBRA claims that they may have had against Visteon through their separation agreements. In Indiana, settlement agreements are governed by the same general principles of contract law as any other agreement. *Fackler v. Powell*, 891 N.E.2d 1091, 1095 (Ind. Ct. App. 2008). As a general rule, the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court. *Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639, 643 (Ind. Ct. App. 1982). If the language of a contract is unambiguous, it is conclusive and binding on the parties and the court. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App.

2007). The Court is to determine the parties' intent from the four corners of the document. *Id.*

The parties do not dispute that these five individuals executed valid separation agreements. Their dispute, instead, centers on the effect of the language contained within these agreements. The Class contends that the language each of the separation agreements contained releasing Visteon for all liabilities through the date of execution did not extend to each individual's COBRA claim because the COBRA claims did not accrue until after the release agreements were signed. In contrast, Visteon asserts that each agreement contains language releasing and waiving the individual Class Member's right to "further compensation and . . . benefits." Visteon argues that the release of any claim or right to "benefits" releases any right that these Class Members may have had with regard to COBRA benefits, the date of execution notwithstanding, because these Class Members agreed that Visteon owed them no additional compensation or benefits aside from those set forth in the separation agreement. The Class contends in its surreply that "it is clear" that COBRA notification is compulsory and may not be waived. The Class cites *Simpson v. T.D. Williamson, Inc.*, For this proposition. 321 F. Supp. 2d 1247, 1251-52 (N.D. Okla. 2004). *Simpson* states in a conclusion of law that "COBRA notice is compulsory and cannot be waived." *Id.* However, this conclusion does not arise in a similar factual context, in that there was no release agreement at issue in *Simpson*. Further, the cases *Simpson* cites supporting its conclusion generally stand for the proposition that neither an employee's knowledge of his or her COBRA rights nor the fact that an employee received COBRA notice upon initial enrollment in a health care plan waives his or her right to notice of his or her COBRA rights after a qualifying event. *See*

13

*MLSNA v. Unitel Communs.*, Inc., 41 F.3d 1124 (7th Cir. 1995); *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901 (W.D. Mich. 2002).

*McDowell v. Krawchison*, the only case the Class cites that concerns a written release agreement, does not speak directly to the issue in this case. 125 F.3d 954 (6th Cir. 1997). Instead, it considers an employee's ability to waive his spouse's rights to COBRA notice by a written agreement. *Id.* at 964. The *McDowell* Court specifically declines to consider whether the release the employee signed waived his spouse's right to COBRA notice, because statutorily, her rights were not contingent upon his. *Id.* "Therefore, even if [the employee] did waive his COBRA rights, he did not – and could not – waive [his spouse's]" *Id.* Indeed, ERISA does not prohibit the release of individual claims as long as they do not diminish the statutory obligations of a fiduciary. *See Boekman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 808 (S.D. Ill. 2006) (stating that Section 410(a) of ERISA does not create a "blanket prohibition of the release of claims for breach of fiduciary duty). In the COBRA context specifically, the First Circuit upheld a similar separation agreement to those at issue here, granting summary judgment for an employer when the plaintiff brought a suit based upon the notice provisions of COBRA. *See Laymon v. Kroger Co.*, No. 90-3115, 1991 U.S. App. LEXIS 2038 (4th Cir. February 12, 1991).

Turning to the language releasing Visteon and Ford from all future claims or rights to "further compensation [and among things] benefits" in each of the separation agreements at issue in this case, the Court concludes that this language does operate as an effective release of the right to bring a claim under the notice provisions of COBRA. The contracts specifically state that the employee is not to file any lawsuit of any kind in either state or federal court with respect to any claim released in the separation agreement.

Accordingly, the Court **GRANTS** summary judgment in favor of Visteon as to that Mr. Zhou, Ms. Wagner, Mr. Mahendru, Mr. Ford, and Ms. Coleman.[2]

---

[2]In a footnote contained within its Response, the Class asserts what appears to be a Rule 11 motion premised upon its contention that Visteon made frivolous arguments as to the settlement agreements of Mr. Zhou, Ms. Wagner, Mr. Mahendru, Mr. Ford, and Ms. Coleman.  The Court notes that the proper procedural avenue to assert such an argument is in its own motion.  *See* L.R. 7.1.  In any event, as the Court has granted summary judgment in favor of Visteon on the issue the separation agreements of Mr. Zhou, Ms. Wagner, Mr. Mahendru, Mr. Ford, and Ms. Coleman, the Court **DENIES** the Class's Rule 11 Motion.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS in PART** and **DENIES in PART** Defendants' Motion for Partial Summary Judgment as to the Claims of Certain Class Members. Specifically, the Court **GRANTS** Summary Judgment in favor of Visteon as to the claims of: Wenseslao Holguin; Alberto Delfim; Stephen De La Salle; Rodrigo Guillen; Frank Amirhamzeh; James Fazio; Ahmed Omara; Anthony Verbiscus; James J. Kelly; Paul G. Stever; Radbound Vaessen; Luis Munoz; Bibiane Comte; Daniel Gizaw; William Patton; Michael Hagemann; Luiz C. Rodrigues; Paul McNeill; Andrezj Polak; Christopher Duco; Denise James; Ross Richardson; Javay Coleman; Subhash Mahendru; Hong Zhou; Ana Wagner; and Kenneth Ford. The Court **DENIES** Summary Judgment as to the seven hundred seventy-one Class Members who received notice from Ford Healthcare Management between May 2000 and July 2002.

IT IS SO ORDERED this 30th day of December, 2011.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP
hmurphy@btlaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com