UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DARRYL  and SHARON PIERCE On Behalf Of Themselves And All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 1:05-cv-01325-LJM-DKL |
| | ) | |
| VISTEON CORPORATION, and VISTEON SYSTEMS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER ON ATTORNEY'S FEES & COSTS</u>

On June 25, 2013, this Court entered its Findings of Fact and Conclusions of Law after a Bench Trial by written submissions on Plaintiffs Darryl and Sharon Pierce's (collectively, "Plaintiffs'"), on behalf of themselves and all other similarly situated (all plaintiffs, collectively, the "Class"), claims against Defendants Visteon Corporation and Visteon Systems, LLC (collectively, "Visteon"), under the Consolidated Omnibus Reconciliation Act ("COBRA"), 29 U.S.C. § 1132(c), which is part of the Employee Retirement Income Security Act ("ERISA").  Dkt. No. 300.   Therein, the Court awarded each member of the class $2,500.00 in statutory damages, or a total of $1,852,500.00 to be shared equally amongst the Class members; and their reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g).  *Id.* at 43-46.

Pursuant to the Court's directive, on July 23, 2013, Plaintiffs' filed their Motion for Award of Statutory Attorney's Fees and Costs to the Class and Motion for Attorney's Fees and Costs to Class Counsel ("Attorney's Fees Motion").  Dkt. No. 309.  Plaintiffs

argued that they should be awarded statutory attorney's fees under a lodestar calculation in the total amount of $297,175.00 and costs in the amount of $11,400.36. Dkt. No. 311, at 1.   In addition, Class Counsel requested "reasonable compensation pursuant to the common fund doctrine in the amount of one-third (33 1/3%) of this suit's common fund, $617,500.00, excluding whatever amount the Court may award to the Class as statutory attorney's fees and costs and costs in the amount of $11,400.36." *Id.* at 1-2.  Visteon objected to the number of hours expended by Class Counsel and to the Plaintiffs' proof regarding the reasonable rate for paralegals in Class Counsel's firm ("paralegal rate issue").  Dkt. No. 315.   In addition, Visteon provided commentary on equitable considerations regarding Class Counsel's request for compensation under the common fund doctrine.  *Id.*  Apparently based on the paralegal rate issue, Plaintiffs' filed a Motion for Discovery seeking to obtain Visteon's counsel's paralegal rates.  Dkt. No. 319.   In their Reply, Plaintiffs requested an additional amount in attorney's fees and costs that were incurred after the Attorney's Fees Motion was filed, which made the total request for statutory attorney's fees and costs of $304,027.50 in attorney's fees and $11,444.97 in costs; Plaintiffs' Counsel's request for one-third of the common fund remained unchanged, although his request for costs was updated.  Dkt. No. 317 at 1-2.

On or about December 23, 2013, the Class was provided notice of both the Court's decision regarding statutory damages and the Attorney's Fees Motion, and provided an opportunity to respond and/or object.  Dkt. Nos. 333, 328, 312-1.   One Class member, Kimberly Davidson ("Davidson"), mailed a response to the Court; Class Counsel reported no other responses.  Dkt. Nos. 332 & 333.

For the reasons stated herein, the Court finds as follows.

## I. <u>FACTUAL BACKGROUND</u>

On September 6, 2005, Plaintiffs filed this suit as a putative class action alleging that Visteon had violated the COBRA provisions of the ERISA, when it failed to provide timely notice of the putative class members' COBRA rights.  Dkt. No. 1, at 4-5.  By Orders dated September 14, 2006, and October 4, 2007, the Court certified the Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  Dkt. Nos. 67, 116.  Notice was sent to the Class between October 19, 2007, and October 31, 2007.  Dkt. Nos. 107, 119.

On May 27, 2009, Visteon filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Action").  Dkt. No. 217.  This case was stayed pending resolution of the Bankruptcy Action.  Dkt. No. 218.

In the Bankruptcy Action, on February 8, 2011, a hearing was held on Visteon's motion to lift the plan injunction to allow resolution of Plaintiffs' claims in this Court.  Dkt. No. 315-2.  The transcript of the hearing reflects that Visteon's bankruptcy counsel believed that Plaintiffs' objected to Visteon's motion; however, Plaintiffs' Counsel made no objection on the record.  *Id.* at 20-21.  Plaintiffs' Counsel attests that he did prepare an objection and sent it to the Bankruptcy Court and that he appeared at the hearing telephonically.  Dkt. No. 317-1, ¶¶ 10 & 11.  There is no evidence in the Bankruptcy Court's record that Plaintiffs' Counsel filed a formal objection or appeared at the hearing.  *Id.* at 20; Dkt. Nos. 315-3 (Hearing Sign-In Sheet); 318-2 (Bankruptcy Action Docket Sheet).  The Bankruptcy Court granted Visteon's motion.

On February 15, 2011, Visteon filed a Motion to Lift the Stay of Proceedings in light of the Bankruptcy Court's Order Lifting the Plan Injunction to Permit the District Court to Adjudicate (1) the Claim of Darryl and Sharon Pierce and All Others Similarly Situated (No. 2796) and (2) the Claim of Edward Shedlock and All Other Similarly Situated (No. 2800).[1]  Dkt. No. 221.  This Court granted Visteon's motion and ordered the stay lifted on March 2, 2011.  Dkt. No. 222.  At that time, several motions were pending, including Visteon's Motion for Partial Summary Judgment, and the Court was not inclined to enter a scheduling order until the motions had been ruled upon.  Dkt. No. 223.

On December 30, 2011, the Court granted in part and denied in part Visteon's Motion for Partial Summary Judgment.  Thereafter, although neither party had made any request to resolve the remaining issues, the Court held a Status Conference on September 11, 2012, to discuss outstanding discovery issues and to set a trial date.  Dkt. No. 231.  Thereafter, the Court set a briefing schedule on an evidentiary matter and a trial date.  *Id.*

On February 22, 2013, the Court resolved additional discovery issues with the parties and confirmed the date and time for the Final Pretrial Conference.  Dkt. No. 244.  At the Final Pretrial Conference, the parties confirmed, based on their Joint Proposed Briefing Schedule, that they would submit the remaining issues to the Court by brief.  Dkt. No. 246.

---

[1] The Shedlock case, styled *Shedlock v. Visteon Corporation*, 1:09-cv-00627-LJM-TAB, was also pending in this Court.  On October 24, 2012, the Court entered judgment in favor of Visteon in that matter.  *Shedlock v. Visteon Corporation*, 1:09-cv-00627-LJM-TAB, Dkt. No. 84.

As previously stated, on June 25, 2013, the Court issued its Findings of Fact and Conclusions of Law After BenchTrial.  Dkt. No. 300.  On the merits, the Court found that: (1) the Class was comprised of 741 individuals, *id.* at 36; (2) there was "ample evidence in the record that Visteon was grossly negligent or willfully ignored the COBRA notice provisions of ERISA prior to 2007 and that such disregard caused harm to its former employees who were entitled to notice," *id.* at 36-42;" (3) in weighing the relevant factors, the Class was entitled to a statutory penalty in the total sum of $1,852,500.00, which equates to $2,500.00 per Class member, *id.* at 43-45; and (4) under any test enunciated by the Seventh Circuit Court of Appeals, the Class was entitled to an award of reasonable attorney's fees pursuant to the ERISA fee-shifting statute, *id.* at 45-46.

On or about December 23, 2013, the Class was provided notice of the Court's decision and provided a copy of the Attorney's Fee Motion.  Dkt. No. 309.  On January 21, 2014, the Court received Davidson's letter in response to the Notice.  Dkt. No. 332.  Therein, Davidson states, among other things, "Since the court system found that Visteon was negligent in their actions then I don't see why the people should have to pay their own attorneys."  *Id.*  In addition, she writes, "I don't think it is fair to make the people pay for their own attorney fees.  The amount that was awarded for the people is because they were hurt by Visteon and deserve their fair share of the total amount awarded for damages."  *Id.*  But, Davidson concluded, "Bottom line is Visteon should be forced to pay for their own attorney fees since they did not abide by the laws set by our great state."  *Id.*  The Court has construed Davidson's letter as an objection to application of the common fund doctrine in this case.

## II. <u>DISCUSSION</u>

### A.  PLAINTIFFS' FEE PETITION & VISTEON'S OBJECTIONS

As set forth above, the Court concluded that the Class is entitled to its reasonable attorney's fees.  Dkt. No. 300, at 45-46.    Pursuant to 29 U.S.C. § 1132(g), "the [C]ourt, in its discretion may allow a reasonable attorney's fee and costs of action to either party."[2]   This is a fee-shifting statute in derogation of common law, which, generally, was "enacted for the purpose of encouraging the private prosecution of certain favored actions, by requiring defendants who have violated plaintiffs' rights to compensate plaintiffs for the costs they incurred to enforce those rights."  *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562-63 (7th Cir. 1994) (citations omitted).  There is no argument that, when appropriate, an award of attorney's fees under this section is calculated using the lodestar method, which entails multiplying the "number of hours reasonably expended in the litigation . . . by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See also* Dkt. Nos. 311, at 4-5; 315, at 2-4. Adjustments may be made for "excessive, redundant, or otherwise unnecessary" hours, Hensley, 461 U.S. at 434.  Or, adjustments may be made if special circumstances exist as measured by several factors:  the time and labor required; the novelty and difficulty of the question; the skill requisite to perform the legal service properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the undesirability of

---

[2] Also relevant here is Rule 23(h) of the Federal Rules of Civil Procedure ("Rule 23(h)") which provides, in pertinent part, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

the case; the nature and length of the professional relationship with the client; and awards in similar cases.  *Id.* at 430 n.3.

### 1. <u>Reasonably Hourly Rates</u>

Plaintiffs argue that the following are reasonable rates for the various members of Class Counsel's firm:[3]

| | | |
|---|---|---|
| Ronald Weldy | Class Counsel | $325.00 per hour |
| Mark Drummond | Sr. Associate | $250.00 per hour |
| Hannah Thompson | Associate | $200.00 per hour |
| Matthew Derringer | Associate | $200.00 per hour |
| Cathy A. Evans | Paralegal | $125.00 per hour |
| Amanda Imel | Paralegal | $125.00 per hour |
| Melissa Rusler | Paralegal | $125.00 per hour |
| Kristeen Mills | Paralegal | $125.00 per hour |
| Melinda Wiggins | Paralegal | $125.00 per hour |
| Kay Redmond | Paralegal | $125.00 per hour |
| Janeen Weldy | Paralegal | $125.00 per hour |
| Logan Morris | Paralegal | $125.00 per hour |
| Katie Geiger | Paralegal | $125.00 per hour |

With respect to Class Counsel's rate of $325.00 per hour, Visteon does not dispute either that the rate is reasonable or that the current rate should be used as the multiplier even though this case has been pending for nearly nine years.[4]  Further, in support of Class Counsel's rate, Plaintiffs' provided: (1) Class Counsel's own affidavit that his current hourly rate is $325.00 per hour and that the same rate was recently approved in another matter pending in the Southern District of Indiana styled *McLayea*

---

[3] Class Counsel also set forth a rate for Julie Camden of $145.00 per hour; however, there was no justification provided for the rate.  Further, Class Counsel included 0.5 hours of time for Julie Camden, to which Visteon objected as unsubstantiated in any way.  Dkt. No. 315, at 10.  Class Counsel withdrew his request for those fees, *see* Dkt. No. 317, at 4 n.1; therefore, the Court has excluded them from the discussion.

[4] The hourly rate included in the fee agreements Class Counsel signed with Plaintiffs in September 2005 quoted an hourly rate for Class of Counsel of $200.00 per hour for state court class action work; however, Class Counsel provided adequate support to substantiate his current hourly rate.

*v. Doc G. Keys, Jr.*, Cause No. 1:11-cv-01453-SEB-DML ("*McLayea Matter*"), Docket No. 20 (Apr. 19, 2013); (2) a declaration from Philip J. Gibbons, Jr., a labor and employment law attorney who has been practicing since 1996, who attested that his current hourly rate is $330.00 per hour; and (3) a verified petition for attorney's fees in the cause styled *Christian v. American Senior Communities, LLC*, Cause No. 49D11-0810-PL-047706, in the Marion County Superior Court, by Baker & Daniels LLP, attorney Craig M. Borowski, a case in which Class Counsel was opposing counsel and Mr. Borowski's hourly rate was $360.00 per hour.  *See* Dkt. Nos. 309-2, 309-1 & 309-3, respectively.

The Court concludes that Plaintiffs have adequately supported their claim that Class Counsel's $325.00 hourly rate is reasonable.  In addition, the Court concludes that using the current billing rate for the entirety of the time-span of this litigation is fair compensation for the nine-year delay in this litigation, some of which is attributable to Visteon's bankruptcy, a situation completely out of Plaintiffs' or Class Counsel's control. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Skelton v. Gen'l Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988); *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 758 (N.D. Ind. 2008).

With respect to Mark Drummond, Class Counsel affirmed that at the time in question, Mr. Drummond was a former partner at the law firm of Henderson Daily and was an experienced litigator with 10-15 years of experience.  Dkt. No. 309-1, ¶ 14.  In the 2005/2006 time frame, Mr. Drummond's hourly rate was $250.00 per hour.  *Id.* Visteon does not challenge the reasonableness of this hourly rate.  The Court also

concludes that Plaintiffs have provided evidence that Mr. Drummond's hourly rate, at the applicable time, was reasonable.

With respect to Class Counsel's two Associate attorneys, Class Counsel affirmed that both graduated from law school in May 2012 and that the market rate in Indianapolis for associate attorneys working on federal court cases is $200.00 per hour. *Id.* ¶ 15. Visteon does not challenge the reasonableness of this hourly rate. The Court concludes that Plaintiffs have presented adequate evidence that the hourly rate of associates in the Indianapolis market in 2012-2013 was $200.00 per hour.

With respect to Class Counsel's paralegal staff, Class Counsel affirmed that the hourly rate of $125.00 per hour is the market rate for paralegals working on federal law suits in Indianapolis. *Id.* ¶ 16. Further, Class Counsel affirmed that this rate was previously approved in the Southern District of Indiana in the *McLayea Matter*. *Id.* ¶ 17. In addition, Class Counsel provided the most recent Indiana Paralegal Association, Inc.'s, Survey Summary where it was reported that 61% of the paralegals in the Indianapolis market were billing at a rate of at least $120.00-$129.00 per hour. Dkt. No. 317-1, ¶ 15 & Dkt. No. 317-2. In addition, Plaintiffs' filed a motion for discovery regarding the rates paid by Visteon's counsel to paralegals; however, in light of the additional information provided by Plaintiffs in Reply, Visteon has dropped its objection to the paralegal rate. As such, Plaintiffs' Motion for Discovery, Dkt. No. 319, is **DENIED as MOOT**. In light of the comprehensive evidence provided by Plaintiffs, the Court concludes that $125.00 per hour is a reasonable rate for paralegal work for the entirety of the litigation, but only to reflect an enhancement for the time delay of this litigation.

In summary, the Court concludes that Plaintiffs have presented enough evidence to support the reasonableness of Class Counsel's and his staff's rates, with the caveat that the Court has allowed Plaintiffs to use the current rates to reflect the significant delay in obtaining a judgment.

### 2.  Number of Hours Reasonably Expended

Initially, Plaintiffs asserted that Class Counsel and his staff had expended the following number of hours:

| | | |
|---|---|---|
| Ronald Weldy | Class Counsel | 652.6 Hours |
| Mark Drummond | Senior Associate | 17.0 Hours |
| 2012 Graduates | Associates | 64.8 Hours |
| All Others | Paralegals | 518.3 Hours |

Visteon objected to 8.7 hours of Mark Drummond's time as duplicative of that of Class Counsel who billed the same number of hours for the same discussion.  Dkt. No. 315, at 6-9.  Class Counsel withdrew his request for those hours.  Dkt. No. 317, at 4 n.1. Class Counsel also withdrew duplicative hours of Mr. Derringer incurred for attending the Status Conference on July 18, 2013.  *Id.*

Visteon also objected to Class Counsel's entry of 3.4 hours on August 26, 2007, for reviewing and revising the class spreadsheets because it was duplicative of Janeen Weldy's entry number 29292 for the same task.  Class Counsel asserts that his work differed from that of paralegal Janeen because he was analyzing the spreadsheets that had been prepared by the paralegals, including Janeen, and revising and altering the information contained therein.  Dkt. No. 317-1, ¶¶ 4-6.  The Court concludes that these hours were reasonably spent and need not be deducted in light of the multiple

difficulties associated with developing a class list as a result of Visteon's apparently poor record keeping practices.

Visteon objected to 1.1 hours of Class Counsel's time on September 3, 2005 for drafting the complaint which is "duplicative" of another entry of 0.7 hours on the same date for the same activity. Dkt. No. 315, at 10. Class Counsel attests that the time was not duplicative, it was cumulative and just not added together when he summarized his bills. Dkt. No. 317-1, ¶ 7. The Court concludes that it was reasonable for Class Counsel to spend 1.8 hours total in drafting the complaint.

Visteon asserts that the Court should exclude time that Class Counsel or his firm spent on failed motions. Dkt. No. 315, at 10-18 (citing *Hensley v. Eckerhart*, 416 U.S. 424, 434 (1983); *City of Riverside v. Rivera*, 477 U.S. 561, 566 (1986); *Sommerfield v. City of Chi.*, No. 06 C 3132, 2013 WL 139502, at *3 (N.D. Ill. Jan. 10, 2013)). These include 4.3 hours spent on the Second Motion to Amend the Complaint (Dkt. Nos. 127, 140); 5.4 hours  spent on a Motion to Stay/Review Pre-Trial Decision of Magistrate (Dkt. Nos. 156, 157); 106 total hours spent on a Motion to Permit Mailing to Additional Class Members and the related Motion for Reconsideration (Dkt. Nos. 190, 202, 205, 224); 12.4 hours spent on a Motion *in Limine* and the related Motion for Reconsideration (Dkt. Nos. 172, 202, 205, 224); 34.2 hours spent on a Motion to Compel and the related Motion for Reconsideration (Dkt. Nos. 182, 202, 205, 224); 11 hours spent on a Motion for Partial Summary Judgment on the Continuing Violation Doctrine (Dkt. Nos. 90, 117); 4.3 hours spent on Plaintiffs' Opposition to Visteon's Motion to Narrow the Class Definition (Dkt. Nos. 112, 116); 5.2 hours spent on Plaintiffs' Opposition to Visteon's Motion to Consider Supplemental Evidence from Ford Motor Company (Dkt. Nos. 234,

236); 13.2 hours spent by Associate Attorney Hannah Thompson on the bankruptcy issue upon which Plaintiffs' lost at trial (Dkt. Nos. 292, at 20-22; 300, at 21, 31-35).

Plaintiffs contend that the case law does not support Visteon's assertion that fees should be cut for unsuccessful motions.  First, while *Hensley* and *Rivera* stand for the proposition that the Court should consider cutting fees for unsuccessful claims, there was only a single claim in this case upon which the Class prevailed.  Dkt. No. 317, at 5. Second, Plaintiffs argue that Visteon never argues that any motions practice was frivolous or unsupported or "unreasonable, unfounded, repetitive and dishonest" as required by the court in *Sommerfield*; therefore, there is no justification for eliminating any hours or fees for unsuccessful motion practice in this case.  *Id.* at 5-6.  Plaintiffs further contend that a reduction in fees for failed motions would have a chilling effect on advocacy in fee-shifting cases. *Id.* at 6-7.

In *Hensley*, the Supreme Court stated that it is proper for a district court to exclude hours that are "excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. at 434.  The rule of thumb provided by the Supreme Court is using proper billing judgment:  "'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'"  *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in *Copeland*).  The *Sommerfield* court concluded that a reduction in the number of hours spent on "unsuccessful (and at times frivolous and unnecessary) motions" fell under this rubric. *Sommerfield*, 2013 WL 139502, at *2-3.  In that case, the district court took into consideration the attorney's "pattern of filing frivolous and unsupported motions,"

including "needless and baseless motions for reconsideration," and approved a reduction of 864 hours. *Id.* at *2-3.

Applying these principles to the facts of the instant matter, the Court concludes that no adjustments are needed. The case law does not support the proposition that the Court should make deductions for every motion lost by the Plaintiffs. Rather the overarching theme is whether or not the claims were successful and, here, Plaintiffs' claim was very successful because for the "technical violation" asserted by Plaintiffs, the Court awarded each member of the Class $2,500.00 in light of the strong evidence of Visteon's bad faith. However, although much of the delay in this matter is attributable to Visteon, Class Counsel also seemed to prolong the proceedings by filing multiple, and often overlapping, motions to review magistrate judge orders and/or motions for reconsideration. *See, e.g.*, Dkt. Nos. 148, Plaintiffs' Motion to Review Pre-Trial Decision of Magistrate (regarding mailing pre-trial questionnaires); 156, Plaintiffs' Motion to Review Pre-Trail Decision of Magistrate (regarding denial of motion to stay mailing pre-trial questionnaires); 205 (Motion to Reconsider regarding Court's Order denying Plaintiffs' objections to two Magistrate Judge rulings and other related rulings). This was a frustrating and tedious practice, but the Court cannot conclude that it was done vexatiously because Class Counsel supported the majority of his arguments with citations to contrary case law that might have persuaded the Court to rule differently. As a result, the Court concludes that deduction of even those hours is not warranted.

Visteon also challenges the number of hours that Class Counsel's paralegal staff spent reviewing Visteon's production and preparing a list of Class members. Dkt. No. 315, at 18-20. Visteon asserts that seven individuals spent 295.7 hours to complete this

13

task.  *Id.* at 18-19.  Visteon claims that, given that Visteon produced the information in an electronically-sortable format, 295.7 hours is unreasonably high and should be cut in half.  *Id.* at 19-20.  Plaintiffs assert that the paralegal staff was not only reviewing Visteon's production and creating a class list, the staff was also developing an accurate mailing list for 1,650 putative Class members.  Dkt. No. 317, at 7.

The Court concludes that the paralegal time was reasonably spent.  The raw data Visteon provided was not a model of clarity.  Further, as the Court discussed in its decision on the penalty, Visteon's record-keeping practices were ineffective; therefore it is not a surprise that confirming information contained in the database, including addresses, would take considerable time and effort.  Therefore, based on Class Counsel's further explanation for the time spent, his paralegals reasonably spent their time reviewing Visteon's data and compiling a class list complete with current, verified addresses.

Next, Visteon argues that the Court should deduct the number of hours Class Counsel spent preparing for and "attending" the Bankruptcy Court hearing on February 8, 2011.  Dkt. No. 315, at 20.  Visteon states that there is no evidence that Class Counsel attended the hearing or actually filed a opposition to the motion that he claims to have prepared.  *Id.*  Accordingly, Visteon requests that the Court deduct a total of 1.1 hours of Class Counsel's time for these matters.  *Id.*

Class Counsel attests that he did attend the hearing as evidenced by his Court Call cost and long distance phone bill for February 8, 2011.  Dkt. No. 317, at 8 (citing 2d Weldy Aff. ¶¶ 10-11; Dkt. No. 310-1, at 106-07 (timeslips)).  He also attests that he sent

the opposition via FedEx. *Id.* Class Counsel avers that he has no idea why his statements made during the hearing were not on the record. *Id.* at 8 n.2.

The Court is not convinced from Class Counsel's scant evidence that he attended the hearing or filed an opposition in the Bankruptcy Court. First, the best evidence of what transpired in the Bankruptcy Court on February 8, 2011, is the hearing transcript and the docket sheet. There is no evidence on the transcript that Class Counsel either appeared or argued on behalf of the Class at that hearing. Dkt. No. 315-2. Similarly, the Bankruptcy Court's docket does not reflect any filings from Class Counsel at or near the time of the hearing. Dkt. No. 323-1. Second, the "Court Call" charges Class Counsel points to as evidence of his presence at the hearing were billed by Janeen Weldy on February 9, 2011, one of which is a surcharge. Dkt. No. 310-1, at 106-07. There is no corresponding phone bill in the record. Further, although there is a FedEx charge dated October 14, 2009, there is no FedEx charge near or about the day before the February 8, 2011, hearing. Dkt. No. 310-1, at 105. Based on these facts, the Court must conclude that Visteon's objection is well taken and the Court will exclude Class Counsel's 1.1 hours for drafting an opposition to Visteon's Motion to Lift the Plan Injunction and attending the hearing on same in the Bankruptcy Court.[5]

Finally, Visteon challenges Class Counsel's time for preparing the Attorney's Fees Motion. Specifically, Visteon claims that the $24,650.00 in fees that Class Counsel and his staff incurred since the Court issued its Findings of Fact and Conclusions of Law on June 25, 2013, are excessive. Dkt. No. 315, at 20-21 (citing Dkt. No. 310-1, at 95-101). Visteon points out that Class Counsel incurred nearly the same

---

[5] This reduction of 1.1 hours amounts to $357.50.

amount in fees for work leading up to and culminating in the filing of Plaintiffs' Trial Brief, a total of $26,465.00 for four months of work, including drafting the Trial Brief.  *Id.* at 21 (citing Dkt. No. 310-1, at 86-93).  Visteon also contends that Class Counsel's citations to Sixth Circuit law as controlling in this Court evidences that some of the brief, but at least some of the research, was done for another case filed in Ohio.  *Id.* at 21 n.8.

Class Counsel argues that his calculations evidence that he spent $17,912.50, or 6% of the total amount of fees Plaintiffs' seek, to prepare the Trial Brief.  Dkt. No. 317, at 8-9.  He further states that the work was recorded as it was performed and included making sure the item billed was proper and easily understood; talking with and obtaining affidavits from experienced ERISA plaintiff's attorneys; researching lodestar calculations and the common fund doctrine; and drafting the brief.  *Id.*

The Court agrees with Visteon that the time spent by Class Counsel to prepare the Attorney's Fee Motion is excessive.  Class Counsel filed eight exhibits with the Motion, three of which were affidavits from other attorneys, solicitation and, apparently preparation, of which were billed separately from other exhibit preparation work.  *See* Dkt. No. 310-1, at 99-100.  Class Counsel billed 16.8 hours to prepare his own affidavit, presumably copy a Verified Petition for Attorney Fees in a case in which he as opposing counsel and the *Constantino* order, prepare a bill of costs and run his pre-bill worksheet.  *Id.* at 99-101.  Entries for all exhibits other than the attorney affidavits are noted with a single sentence:  "Preparation of exhibits for Motion for Atty Fees," *id.*; therefore, there is no way for the Court to know exactly how much time Class Counsel spent on which exhibits.  Further, Janeen Weldy spent an additional 10.1 hours to "[w]ork on exhibits for Motion for Atty Fees."  *Id.* at 101.  Although the Court appreciates that Class Counsel

would spend time reviewing the pre-bill worksheet before filing it, in combination with the other exhibits he filed, the Court cannot accept that it took a combined 26.9 hours, nearly 68% of one 40-hour week to prepare the exhibits.  Perhaps if Class Counsel's and his staff's entries were more specific about exactly what issues or items were being worked on the Court could agree that the time was reasonably spent; however, on this record, the Court must reduce the hours by approximately 50%.  It would be reasonable for Class Counsel to spend 8 hours reviewing a pre-bill and for a paralegal to spend an additional 5 hours preparing the few exhibits that were filed.  Therefore, the Court will reduce the number of hours for Class Counsel by 8.8 hours; and for paralegal Janeen Weldy by 5.1 hours.[6]

In his Reply, Class Counsel also requested fees incurred between the time of filed the Attorney's Fee Motion and filing the Reply as well as additional work to be performed, including working with the Class Administrator on notice and requested the following additional fees and costs:  Class Counsel:  21.4 hours; Associates: 8.4 hours; Paralegals: 5.0 hours; $44.61 in copies and postage.  Dkt. Nos. 317, at 12; 317-1; 317-3.  Visteon did not object to these additional amounts, *see* Dkt. No. 323, and the Court considers them reasonable.

### 3.  **Additional *Henley* Considerations**

Visteon asserts that the Court should reduce the lodestar amount because the Plaintiffs failed to convince the Court that they were entitled to the statutory maximum penalty of $110.00 per day, per violation.  Dkt. No. 315, at 22-23.  Visteon claims that the Seventh Circuit has concluded "that where a party achieves less than 10% of his

---

[6] A reduction of 8.8 hours for Class Counsel amounts to $2,860.00; a reduction of 5.1 hours for paralegal Janeen Weldy amounts to $637.50.

initial demand (like Plaintiffs in this case), he either is not a prevailing party for purposes of fee-shifting statutes or should be treated as if he had not prevailed." *Id.* at 22-23 (citing *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999); *Cole v. Wodziak*, 169 F.3d 486, 489 (7th Cir. 1999)).  Visteon contends that the Court should consider the success in this case limited and reduce the recovery of attorney's fees either to the percentage of the actual award compared to what was demanded (2.5%) or by some other amount commensurate with reductions in other cases.  *Id.* at 23 (citing *Cole*, 169 F.3d at 489, for the proposition that "recovering less than 10% of the demand is a good reason to curtail the fee award *substantially*" (emphasis by Visteon); *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001), for the proposition that a 50% "limited-success reduction [was] entirely justified;" and *Sughayyer v. City of Chicago*, No. 09 C 4350, 2012 WL 2359065, at * 14 (N.D. Ill. June 20, 2012), for the proposition that limited success justified a 45% reduction in the attorney's fees awarded).

Plaintiffs argue that Visteon's analogies to reduction of the lodestar amount in other cases are flawed because of the nature of the analysis in this ERISA failure to notify case.  Dkt. No. 317, at 10-12.  Plaintiffs contend that while percentage reductions might make sense in a case where the number of overtime hours worked or the amount of back pay and/or front pay accumulated is at issue, here the statutory penalty is discretionary and such a percentage method is illogical.  *Id.* at 11.

The Court agrees with Plaintiffs that their success cannot be measured by the amount of the statutory penalty and cannot, alone, justify a reduction in attorney's fees in this case.  As the parties are aware from its Findings of Fact and Conclusions of Law After Bench Trial, this Court spent considerable time reviewing the parties' evidence

and the factors for determining whether a penalty was warranted at all.  *See, generally*, Dkt. No. 300.  The proof required to justify an award at all is the same as that which the Court considers when determining the amount of any penalty.   Therefore, the discretionary nature of the relief in this case makes it substantially different from cases in which the parties can put a numerical value on lost wages or benefits.

Further, in reviewing failure to notice cases and their outcomes when it considered the merits of Plaintiffs' claims, the Court was struck with the wide variance in the amounts that various courts considered adequate to fulfill the goals of ERISA.  And, in making its determination of the amount of the penalty in this case the Court had to balance the egregiousness of Visteon's conduct with the prejudice to Plaintiffs.  Dkt. No. 300, at 43-45.  The outcome of that balance is one the Court considers fair to the Plaintiffs and the Class as well as one that reflects the purpose of the ERISA civil enforcement statutes.  *Id.*  But, the Court will not again balance the outcome against the amount Plaintiffs requested because it would unfairly prejudice the class and reward Visteon, which is an outcome at odds with the purpose of the penalty and an award of fees under the ERISA scheme.

For these reasons, the Court declines Visteon's invitation to make a wholesale adjustment based on lack of success; the Court considers the Plaintiffs and the Class to have been successful.  In addition, the Court will not adjust the lodestar amount as to any other of the *Henley* factors.

### 4.  Lodestar Amount and Costs

Having made its rulings on Visteon's objections, for the reasons set out above, the Court concludes that the lodestar amount of attorney's fees, for a total of 1,280.5 hours, is $302,780.00.

A prevailing party is entitled to costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.  There is no argument that Plaintiffs were the prevailing parties for purposes of Rule 54(d).  Plaintiffs have submitted a Bill of Costs, Dkt. No. 309-5, in the total amount of $11,400.36; and additional costs incurred since the filing of the Bill of Costs in the amount of $44.61, Dkt. No. 317-1, ¶ 17, for a total of $11,444.97.  Visteon has no objection to this amount and the Court considers the costs reasonable for a class action.   Therefore, Plaintiffs and Class Counsel are entitled to a total of $11,444.97, in costs.

### B.  CLASS COUNSEL'S REQUEST
### FOR APPLICATION OF THE COMMON OR EQUITABLE FUND DOCTRINE

Although Visteon vigorously fought against application of the fee-shifting statute in this case, the Court disagreed.  However, Class Counsel also requests that the Court make an award of attorney's fees to him under the common or equitable fund doctrine, which is also an exception to the common law.   *See Florin*, 34 F.3d at 563.   The common fund doctrine allows a litigant or class counsel to draw a reasonable fee when the litigant or class counsel "recovers a common fund for the benefit of persons other than himself or his client . . . from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citation omitted).   *See also Florin*, 34 F.3d at 563.   It is an equitable doctrine and is based "on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful

litigant's expense." *Boeing*, 444 U.S. at 478 (citation omitted).  *See also Florin*, 34 F.3d at 563 ("The common fund doctrine is based on the notion that not one plaintiff, but all '"those who have benefitted from litigation should share its costs."'" (citing *Skelton v. Gen'l Motors Corp.*, 860 F.2d 250, (7th Cir. 1988) (other citations omitted by the *Florin* court))).   Although there are two approaches to determining such a fee, the lodestar method and the percentage of the fund method, the Seventh Circuit has noted the advantages of the percentage of the fund method.  *See Florin*, 34 F.3d at 566.  Further, "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citations omitted).

The Seventh Circuit has opined that in cases that are "'initiated under a statute with a fee-shifting provision [but] is settled with the creation of common fund' . . . 'the statute must control and the doctrine must be deemed abrogated to the extent necessary to give full effect to the statute.'"  *Florin*, 34 F.3d at 563 (citing, respectively, *Skelton*, 860 F.2d at 254; *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 13327 (2d Cir. 1990)).  In *Skelton*, the Seventh Circuit held that "when a settlement fund is created in exchange for release of the defendant's liability for both damages and for statutory attorney's fees, equitable fund principles must govern the court's award of attorney's fees."  *Skelton*, 860 F.2d at 256.

This line of cases seems to suggest that the common fund doctrine applies to settlements that are intended to resolve all issues in the case, both damages to plaintiffs and attorney's fees; but not to cases where the damages issues and attorney's fees

issues are left for separate adjudication.  *Accord Goodyear v. Estes Express Lines, Inc.*, No. 1:06-cv-863-JDT-TAB, 2008 WL 687130, at *6, n.6 (S.D. Ind. 2008) (citing *Evans v. City of Evanston*, 941 F.2d 473, 479 (7th Cir. 1991)).   Indeed, *Evans* is instructive because in that case, the Seventh Circuit determined whether class counsel should share in the recovery awarded to a class of plaintiffs under Title VII of the Civil Rights Act of 1964 ("Title VII").  *Evans*, 941 F.2d at 478-80.  The *Evans* court concluded that "it was unnecessary to allow *both* a recovery from the defendants and the common fund . . . ."  *Id.* at 479 (emphasis in original).  The *Evans* court agreed that the district court had correctly disregarded both an upward adjustment of the lodestar amount and class counsel's request for a share of the proceeds because it was a fair assessment of the effort involved and the limited success of plaintiffs' counsel.  *Id.* at 479-80.  However, in arriving at that conclusion, the *Evans* court noted that policy reasons might also favor such a resolution.  *Id.* at 479.  Specifically, in the Title VII context, "like limiting attorney's fees in these types of actions to the amount agreed upon between a plaintiff and her lawyer in a contingent-fee contract, allowing recoveries from a common-fund would place 'an undesirable emphasis . . . on the importance of recovery of damages.'"  *Id.* (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)).  Such focus would "contradict Congress' purpose in providing for fee shifting in [those] cases, which was 'to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive and declaratory relief.'"  *Id.* (quoting *Bergeron*, 489 U.S. at 95).  Further, the *Evans* court noted that

> since fees paid out of a common fund are only available in multi-plaintiff actions, the widespread use of common fund recoveries as a source of fees for lawyers in Title VII or civil rights cases would not only skew the

incentives of plaintiffs' lawyers toward damages rather than equitable remedies, but also toward class actions rather than suits by individuals.

*Id.*

But, Class Counsel in this case argues that the Court should award the Class the statutory fees, then, based in part on the existence of his contingent fee agreement with Plaintiffs, apply equitable/common fund principles to award him a percentage of the common fund. Dkt. No. 311, at 11-29. Class Counsel asserts that the statutory fee does not substitute for his compensation, it is merely an offset. *Id.* at 14-17. Further, Class Counsel states that an award of statutory fees would be a disincentive to class counsel to maximize a class recovery by securing a judgment. *Id.* at 17-19. Moreover, Class Counsel contends that his approach is supported by *Constantino v. TRW, Inc.*, Case No. C86-3368 (N.D. Ohio), and the reasoning in *Pickett v. Sheridan Health Care Center*, 664 F.3d 632 (7th Cir. 2011). *Id.* at 19-28. Class Counsel also avers that if the Court awards both statutory fees to the Class and a percentage of the common fund to him, the Class member's effective rate would be 17.29%, because the statutory fees would set off the common fund award. *Id.* at 28-29. Although Class Counsel's request for fees from the common fund does not affect Visteon's liability, Visteon has provided the Court with its position on the applicability of the common fund doctrine to this case. Dkt. No. 315, at 23-29. A review of *Constantino* and *Pickett* is warranted.

In *Constantino*, the district court determined, among other things, that TRW had violated ERISA when it excluded an early retirement subsidy from recalculation of retirees' lump-sum distributions. *Constantino v. TRW, Inc.*, 773 F. Supp. 34, 42-43 (N.D. Ohio. 1991), *aff'd in part, rev'd in part and remanded*, 13 F.3d 969 (6th Cir. 1994). There was no ruling on attorney's fees in that published opinion. *See, generally id.* The

Sixth Circuit affirmed the district court's ruling on the early retirement subsidy issue and remanded only to correct the rule for calculating the applicable interest rate. *Constantino*, 13 F.3d at 971.  Sometime after it ruled in the retirees' favor, the district court ordered TRW to pay the retiree class its statutory attorney's fees, plus costs in the total sum of $724,572.50.  Dkt. No. 309-4, at 1.  In addition, the *Constantino* district court stated that TRW should pay litigation expenses in the amount of $24,906.21.  *Id.* at 2.  Further, the district court concluded

> that the sum of $2,215,250.79, which is thirty percent of the cumulative underpayments and interest thereon recovered on behalf of the class, is a reasonable amount to be paid to class counsel as and for reasonable compensation for their services to the class to date and should be distributed to class counsel from the funds deposited by defendants into the Court's registry.  No portion of the $724,572.50 paid by the defendants to the class pursuant to ERISA § 502(g) will be distributed to class counsel.

*Id.*  Other than the citation to ERISA § 502(g), 29 U.S.C. § 1132(g), the *Constantino* district court provided no explanation or authority to support these conclusions.  This Court is not persuaded that it is bound by *Constantino* because, not only is it a district court case in the Sixth Circuit, there is no way for the Court to determine why the *Constantino* court ruled the way it did.

In *Pickett*, the Seventh Circuit reviewed a district court's decision regarding attorney's fees in a case brought by a single plaintiff under Title VII.  *Pickett*, 664 F.3d at 637.  Upon a jury award of $65,000.00 in damages, Pickett's attorneys sought to recover $131,665.88 in attorneys' fees and $1,271.27 in costs.  *Id.* at 637-38. The contract between Pickett and her attorneys required her to pay a 33.33% contingent fee and a $7,500.00 flat fee and assigned to the attorneys her statutory right to fees.  *Id.* at 638.  The contract further provided "that no portion of the contingent fee will be credited

24

towards the statutory fee and that any statutory award is in addition to the contingent fee." *Id.*  In pertinent part, the district court lowered the hourly rate for one of Pickett's attorneys, Rossiello, from $592.50 to $400.00 based, in part, upon the generous contingency fee agreement, as well as other sources outside the record; in the end the district court awarded Pickett $70,000.00 in attorney's fees.  *Id.* at 638-39.

Although other issues were appealed, the one relevant here is whether or not the district court erred when it reduced Rossiello's hourly rate for the lodestar calculation based on a contingent fee agreement.  *Id.* at 639.   The Seventh Circuit concluded that the district erred in doing so.  The court reasoned:

> The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers from the losing party represent distinct entitlements.  In reviewing a fee petition, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination.

*Id.*

The Seventh Circuit, in dicta, went on to discuss the relationship between contingent fee agreements and statutory fees and whether an attorney in a single-plaintiff Title VII case could recover both.  *Id.* at 641-43.  Because the Plaintiffs and/or Class Counsel are not making such an argument here, further analysis of the *Pickett* opinion is unnecessary.  The Court concludes that *Evans* controls here and compels a conclusion that applying the common fund doctrine to this case is inequitable.

Although there is no legislative history for the ERISA fee-shifting provision and the Seventh Circuit has noted that some commentators have said it is a particularly weak provision, the Seventh Circuit has stated that it generally favors plaintiffs.  *Florin*, 34 F.3d at 563 & n.6.  Other circuits have construed the purpose of ERISA's attorney's

fees provision consistently with the purposes of ERISA in general – "to protect employee rights and to secure effective access to federal courts." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040-41 (8th Cir. 2006).  Such a reason is consistent with the purpose of the civil enforcement provision of ERISA, which "is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury [he or] she suffered as a result of non-compliance." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.2d 781, 806 (7th Cir. 2009) (citing, *inter alia*, *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190, 1193 (7th Cir. 1991); *Faircloth v. Lundy Packing Co.*, 91 f.3d 648, 659 (7th Cir. 1996)). Based on this stated purpose, it is reasonable to conclude that an attorney's incentive to bring suits under COBRA should be similar to that in Title VII cases, namely to encourage successful enforcement of ERISA.  *See Evans*, 941 F.2d at 479 (discussing the purpose of the fee-shifting statute in Title VII cases:  to encourage successful civil rights litigation (quoting *Bergeron*, 489 U.S. at 95)).  Therefore, allowing recovery under a common fund theory in an ERISA class action "would not only skew the incentives of plaintiffs' lawyers toward [injuries suffered as a result of non-compliance], but also toward class actions rather than suits by individuals." *Evans*, 941 F.2d at 479.

Further, the Court is not persuaded by Plaintiffs' Counsel's argument that reliance on the statutory fee over a common fund approach would be a disincentive for an attorney to fight for the maximum penalty or to take a case to judgment.  First, there is no guarantee that a court will certify a class action under ERISA in any given scenario as Class Counsel is well aware.  *See, e.g.*, *Gomez*, 649 F.3d at 591-93 (affirming district court's denial of class certification in COBRA notice case brought by Class

Counsel).  Therefore, there is always incentive for the ERISA lawyer to fight for the maximum penalty through a judgment no matter if he represents one client or many. Second, the very nature of the formula for an award of a penalty, which encompasses analysis of the nature of the administrator's conduct (including demonstrations of good or bad faith and/or gross negligence or ill intent) and prejudice to the plaintiff, necessitates that the lawyer strive to attain the maximum penalty allowed by the facts of his case.  It takes as much discovery and effort to argue for the maximum penalty as it does for a minimal one.

Guided by these principles, the Court's analysis of the factors that support a penalty in this case, and the Court's analysis of the balance for awarding attorney's fees, the Court is left with the firm impression that it is unnecessary to allow attorney's fees to be recovered from Visteon and then from the common fund.

### III. CONCLUSION

For the reasons stated herein, the Plaintiffs' Motion for an Award of Statutory Attorney's Fees and Costs to the Class and Motion for Attorney's Fees and Costs to Class Counsel, Docket No. 309, is **GRANTED in part and DENIED in part**.  The Class and Class Counsel are awarded $302,780.00 in statutory attorney's fees and $11,444.97 in costs.  The parties are **ORDERED to SHOW CAUSE on or before March 18, 2014**, why this Court should not entered judgment in favor of Plaintiffs and against Visteon as set forth above.

IT IS SO ORDERED this 11th day of March, 2014.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP
hmurphy@btlaw.com

Koryn Michelle McHone
BARNES & THORNBURG LLP
kmchone@btlaw.com

R. Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

Matthew D. Derringer
WELDY & ASSOCIATES
mattderringer@yahoo.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com